IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES TEAGUE, | § | |
|    *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 1:23-cv-01388 |
| | § | |
| ROHDE AIR CONDITIONING & | § | |
| HEATING LLC, | § | |
|    *Defendant*. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW Plaintiff, James Teague, who files this Original Complaint against Rohde Air Conditioning & Heating LLC, and in support thereof would respectfully show the Court as follows:

### I. NATURE OF THE ACTION

1. James Teague was employed by Rohde Air Conditioning & Heating LLC ("Rohde AC") for a number of years and quickly became one of the most capable and talented installers within the entire company. Mr. Teague suffered an on-the-job back injury in August of 2022 that required both medical treatment and rest. Mr. Teague went through the appropriate channels to submit a Texas workers' compensation claim to cover costs that included medical treatment and the need to miss work. Defendant Rohde AC chose to rush him back to work sooner than recommended and failed to provide reasonable accommodations. Ultimately, Rohde AC terminated the employment of Mr. Teague for illogical reasons as a form of retaliation and/or discrimination against him due to his back-related disabilities and prior filing of a workers compensation claim.

## II. PARTIES

2. James Teague is an individual residing in the Western District of Texas who was discriminated against and suffered adverse employment actions because of his disability and because he chose to file a workers' compensation claim. Plaintiff has standing to bring the claims in this lawsuit pursuant to the Texas Commission on Human Rights Act ("TCHRA"), the Workers Compensation Act, Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Americans with Disabilities ("ADA").

3. Defendant Rohde Air Conditioning & Heating LLC is a Texas limited liability company that was, at all relevant times, the employer of Mr. Teague while engaging in conduct that violated the TCHRA, FMLA, ADA, and Title VII. Defendant may be served with process by serving its registered agent and owner, Josh K. Rohde, located at 306 E. Ave. C, Belton, Texas 76513.

## III. JURISDICTION AND VENUE

4. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

5. Venue is proper in this district based on 28 U.S.C. § 1391(a).

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. Plaintiff timely filed a complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging that Defendant committed unlawful employment practices that violates the laws referenced *supra*.

7. On September 1, 2023, Plaintiff received from the EEOC Plaintiff's Right to File Civil Action letter allowing Plaintiff to file this lawsuit within ninety days of receipt. Plaintiff's statutory claims have been filed within ninety days of receipt. To the extent applicable or necessary, Plaintiff invokes the relation back theory as well as any and all equitable doctrines necessary to satisfy the

administrative requirements set forth by law. All conditions precedent to the filing of this lawsuit and as required by law have been performed or have occurred.

## V. STATEMENT OF FACTS

8. Mr. Teague is a native Texan with over sixteen years of experience working in the HVAC industry. Other than the disputed incident in question, no employer has ever written up or disciplined Mr. Teague for any reason whatsoever, and he has always been known as a reliable and hardworking employee.

9. Mr. Teague eventually started working for Rohde AC and quickly became one of the most capable and talented installers within the entire company. On August 16, 2022, Mr. Teague was working on a job as a Rohde AC Lead Installer when he suffered a back injury. His injury and corresponding pain prevented him from temporarily being able to perform certain tasks that he had performed previously in his job. Mr. Teague made the decision to seek treatment to heal his back injury and filed a workers' compensation claim. His medical doctor prescribed him certain treatments and released him back to work with a medical restriction prohibiting him from lifting anything heavier than 10 pounds until further notice.

10. Rohde AC responded to Mr. Teague's medical injury-related work restrictions by representing that there were no "light duty" jobs available within the entire company. As a result, Mr. Teague took time off work and was paid roughly 70% of his normal salary by Rohde AC's workers' compensation insurance carrier while he healed.

11. Unexpectedly, the company reversed course and communicated that it did have light duty work available—roughly two weeks after Mr. Teague's medical leave started—and he was all but instructed by his employer to return to work. He returned to work on September 7, 2022 and worked in the same role as his supervisor, Ralph Coll. He largely remained in this role for the

remainder of his employment. However, Rohde AC slowly began to make his job environment worse and worse, ostensibly with the aim of convincing him to leave the company voluntarily—and relieve it of an injured employee utilizing workers' compensation benefits and thus cost the company additional money to retain.

12. Such actions included taking away his late model company truck and replacing it with the oldest vehicle owned by the company that was in far worse condition, and was only a single cab model. Another example is sending him to handle jobs that inherently included the need to lift objects that weighed more than his medical work restrictions would allow—and would certainly not constitute "light duty" work he had been promised during the duration of his recovery. The owner of Rohde AC also began asking Mr. Teague how much longer it was going to take for him to get back to 100% in terms of his back injury and otherwise expressed a negative attitude toward Mr. Teague's injured condition.

13. Mr. Teague's doctor slowly increased his work restriction limits from lifting no more than ten pounds to lifting no more than thirty pounds. On November 6, 2022, a customer gave supervisor Ralph Coll a scathing review on Google about his reckless driving. Several other employees had likewise been strongly criticized or made mistakes worth of discipline over the past year but almost never were formally disciplined—much less had their employment terminated because of it. Mr. Teague was *not* one of the employees who had been complained about, written up, disciplined, or otherwise caused problems at work.

14. On November 7, 2022, Rohde AC tasked Mr. Teague with installing a vent-a-hood. He arrived to see the vent-a-hood lying on the ground, and the electrician on site told him he was not supposed to install the vent-a-hood until the following day. Mr. Teague also noticed that the company had provided him with incorrect materials to perform the install. He returned to the shop

to retrieve the correct materials with the intent to return to the property the following day to perform the install—just as the electrician told him was the intended sequencing of work.

15. Mr. Teague returned to work the following day and successfully installed the vent-a-hood as he had been told was the plan from the on-site electrician. He returned to the shop and was called into the office of Josh Rohde, the owner of Rohde AC. The owner informed Mr. Teague that he was being fired—all for doing what he was instructed by an on-site electrician. The employees who had committed actual bad acts over the past year had in contrast not been fired. The owner informed Mr. Teague that "someone of [his] caliber should not have a hard time finding a job," confirming that the termination of his employment had nothing to do with any lack of skill or experience.

16. Mr. Teague filed for unemployment the following day, and it was denied two weeks later due to the company mendaciously asserting that Mr. Teague had been fired for cause. The truth of the matter is that Mr. Teague would never have been fired but for his on-the-job injury, his corresponding workers' compensation claim, and his temporary need for work restrictions during the duration of his recovery. The company also failed to adhere to the disciplinary rules set forth in its employee handbook as it relates to the sudden and unexpected termination of Mr. Teague, including but not limited to the form of discipline relative to the alleged subject infraction.

17. Defendant Rohde AC clearly was knowledgeable about federal employment law, and that its actions were taken with reckless indifference to Plaintiff's federally protected rights. Such knowledge can be inferred from its 23-page handbook that contains information about workers compensation claims, carriers, and duties to report eligible injuries to a supervisor promptly. Based on information and belief, Defendant has dealt with other workers compensation claims made by current or former employees. It can also be inferred from the fact that Defendant found a minor

infraction and fired Plaintiff for that rather than the real reason—his new disability and corresponding workers' compensation claim.

18. As a result of Defendant's discrimination, Mr. Teague was deprived of income and other compensation and/or benefits collectively valued at over $56,000 per year. He has also been forced to personally incur certain medical expenses he would not have had to incur but for Defendant's decision to discriminate against and terminate Plaintiff's employment before his workers' compensation treatments had completed. The discrimination and unjust termination of his employment likewise has caused Plaintiff to experience mental anguish that has manifested itself in ways that include but are not limited to sleeplessness, anxiety, stress, depression, and marital strain. Defendant's discrimination and unjust termination also negatively affected his reputation and professional standing within the industry, which negatively impacted his ability to timely find a replacement job with compensation equal to the compensation earned from Defendant before he was unjustly terminated.

## VI. CAUSES OF ACTION

### A. TCHRA Violations.

19. Plaintiff incorporates by reference all the allegations contained in the paragraphs *supra* and *infra*.

20. Defendant Rohde AC discriminated against Plaintiff because of his disability. TEX. LAB. CODE § 21.052.

21. Defendant retaliated against Plaintiff for opposing a discriminatory practice against him and filing a workers compensation claim. *Id.* at § 21.055.

22. Defendant failed to make a good faith effort to make reasonable accommodations to Plaintiff's disability and/or because Defendant regarded him as having a disability.

23. Defendant was qualified for the job he was performing.

24. Defendant replaced Plaintiff with a non-disabled individual.

25. "An employer who violates this statute is subject to a retaliation claim, which constitutes 'an exception to the traditional doctrine of employment at will found in Texas law.'" *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015) (quoting *Cont'l Coffee Prods. Co. v. Cazarez*, 937 S.W.2d 444, 453 (Tex. 1996) (citation and internal quotation marks omitted)). As a result of Defendant's violations, Plaintiff has suffered actual damages in the form of back pay, interest on back pay, loss of benefits, and mental anguish. *Id.* at § 21.258-2585.

26. As a result of Defendant's violations, Plaintiff will also suffer in the future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses. *Id.* § 21.2585(d). Plaintiff also seeks compensation for his need to incur attorneys' fees, expert fees, and costs. *Id.* at § 21.259. Plaintiff otherwise pleads all possible other damages available to him under Texas law for such claim.

   **B. Workers Compensation Act Violations**

27. Plaintiff incorporates by reference all the allegations contained in the paragraphs *supra* and *infra*.

28. Plaintiff timely notified Rohde AC of his subject injury. Defendant was qualified to do his job and did so at a satisfactory level in the roles assigned to him—both before and after his injury and corresponding workers' compensation claim.

29. Plaintiff subsequently filed a workers compensation claim in good faith and otherwise participated in the process of the adjudication of the claim, or was planning to participate in it. *Id.* at 451.001(1)-(4). Defendant violated the Workers Compensation Act by perpetrating a retaliatory

discharge of Plaintiff. Defendant's conduct in question also constituted an adverse employment action.

30. As a result of Defendant's violations, Plaintiff is entitled to reasonable damages incurred by him as a result of the violation as well as reinstatement. *Id.* at 451.002(a)-(b). Plaintiff pleads all possible damages available under Texas law for such claims. Such damages include but are not limited to compensation for back pay, interest on back pay, loss of benefits, emotional distress, medical expenses, pain and suffering, job search expenses, loss of reputation and/or professional standing, and all other quantifiable out-of-pocket expenses that were incurred as a result of the discriminatory conduct. Plaintiff also seeks compensation for his need to incur attorneys' fees, expert fees, and costs.

31. Plaintiff also seeks exemplary damages due to Defendant's malice, which was evident from the company's actions meant to goad Plaintiff into resigning voluntarily; the causing of embarrassment, mental anguish, and inconvenience by stripping him of his company truck and instead providing the only oldest and worst condition truck owned by the company; and other actions reflecting a negative attitude toward Plaintiff generally about his injuries, work restrictions, time needed to fully heal, and the filing of his workers' compensation claim.

### C. ADA Violations

32. Plaintiff incorporates by reference all the allegations contained in the paragraphs *supra* and *infra*.

33. Plaintiff's on-the-job back injury was formally diagnosed and treated by a medical doctor and led to temporary work restrictions to allow him to heal. Thus, the injury in question constituted a recognized disability pursuant to the ADA.

34. Defendant Rohde AC is large enough in size for the ADA to be applicable to it.

35. Defendant was qualified to do the roles assigned to him—both in the Lead Installer role prior to his injury and the light duty/supervisory role assigned to him after his injury—and performed at a satisfactory level.

36. Defendant requested reasonable accommodations due to his disability, including but not limited to informing the company of his doctor's instructions that he be restricted to light duty work with a limit for lifting objects over a certain weight for the indefinite future, and requesting corresponding accommodations. Defendant Rohde AC initially failed to provide *any* accommodations—and failed to engage in the legally required interactive process—by inaccurately claiming no light work jobs existed within the company. Once light work was unsurprisingly found, Plaintiff performed his duties in that role satisfactorily. However, Defendant even in that phase continued to fail to provide reasonable accommodations by sending him to jobs with instructions to lift objects much heavier than his doctor's proscriptions would allow.

37. Defendant violated the ADA by failing to provide reasonable accommodations in the form of tasking him with *only* light duty work, such as jobs or tasks that would not involve lifting more weight than his doctor's work restrictions specified. Defendant further violated the ADA—by retaliating against him by reason of his disability and requested accommodations—by terminating the employment of Plaintiff based on spurious reasons that had been inequitably applied to him but not to similarly situated employees.

38. Defendant gave better treatment to similarly-situated individuals outside of Plaintiff's protected class. Other employees were allowed to continue working with no formal discipline after similar—or often times far worse—alleged bad acts. Other employees were likewise allowed to assume roles that involved light work.

39. Plaintiff pleads all possible damages available under federal law for such claims. Such damages include but are not limited to compensation for back pay, interest on back pay, loss of benefits, emotional distress, medical expenses, pain and suffering, job search expenses, loss of reputation and/or professional standing, and all other quantifiable out-of-pocket expenses that were incurred as a result of the discriminatory conduct. Plaintiff will also suffer in the future pecuniary losses, front pay, loss of benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation and/or professional standing, and other nonpecuniary losses. Plaintiff also seeks compensation for his need to incur attorneys' fees, expert fees, and costs.

40. Plaintiff further requests non-monetary relief in the form of reinstatement, reasonable accommodations, a positive letter of reference if reinstatement is not feasible, modified policies to make sure Rohde AC does not discriminate against injured persons in the future, and that Defendant be forced to offer mandatory regular training regarding the ADA and job disabilities.

41. Plaintiff also seeks exemplary damages due to Defendant's malice and/or reckless indifference to the federally protected rights of an aggrieved individual. Defendant knew or should have known that its actions constituted violations of Texas and/or federal laws. Defendant's malice and/or reckless indifference was evident from the company's actions meant to goad Plaintiff into resigning voluntarily; the causing of embarrassment, mental anguish, and inconvenience by stripping him of his company truck and instead providing only the oldest and worst condition truck owned by the company; and other actions reflecting a negative attitude toward Plaintiff generally about his injuries, work restrictions, time needed to fully heal, and the filing of his workers' compensation claim. Plaintiff also pleads that Defendant should be subjected to civil penalties associated regularly levied on businesses who have been found to have violated the ADA.

### D. Title VII Violations

42. Plaintiff incorporates by reference all the allegations contained in the paragraphs *supra* and *infra*.

43. Plaintiff belongs to a protected class because of his subject disability and because he exercised the legal right of filing a workers' compensation claim for an on-the-job injury as an employee of Rohde AC. Defendant had proven that he was qualified to do his job and did so at a satisfactory level in the roles assigned to him—both before and after his injury and corresponding workers' compensation claim.

44. Plaintiff requested a reasonable accommodation due to his disability, which Defendants could have provided and would have permitted to Plaintiff to continue working in the light duty/supervisory role assigned to him, and would have allowed him to heal enough to resume his duties as a Lead Installer once such healing was complete.

45. Plaintiff suffered an adverse employment action when Defendant refused to provide reasonable accommodation—in multiple different ways and occasions—attempted to constructively discharge Plaintiff, and then did in fact discharge Plaintiff. Plaintiff suffered such adverse employment action because of his disability and/or because he was regarded as having a disability.

46. Defendants gave better treatment and benefits to other similarly-situated individuals outside of Plaintiff's protected class. Defendant likewise created a hostile work environment because of Plaintiff's disability and for executing his legal right to submit a workers' compensation claim.

47. Plaintiff pleads all possible damages available under federal law for such claims. Such damages include but are not limited to compensation for pecuniary and non-pecuniary losses,

including but not limited to back pay, interest on back pay, loss of benefits, emotional distress, medical expenses, pain and suffering, job search expenses, loss of reputation and/or professional standing, and all other quantifiable out-of-pocket expenses that were incurred as a result of the discriminatory conduct. Plaintiff will also suffer in the future pecuniary losses, front pay, loss of benefits, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation and/or professional standing, and other nonpecuniary losses. Plaintiff also seeks compensation for his need to incur attorneys' fees, expert fees, and costs. Plaintiff also requests non-monetary relief available to him by law, including but not limited to reinstatement.

48. Plaintiff also seeks exemplary damages due to Defendant's malice and/or reckless indifference to the federally protected rights of an aggrieved individual. Defendant knew or should have known that its actions constituted violations of Texas and/or federal laws. Defendant's malice and/or reckless indifference was evident from the company's actions meant to goad Plaintiff into resigning voluntarily; the causing of embarrassment, mental anguish, and inconvenience by stripping him of his company truck and instead providing only the oldest and worst condition truck owned by the company; and other actions reflecting a negative attitude toward Plaintiff generally about his injuries, work restrictions, time needed to fully heal, and the filing of his workers' compensation claim.

## VII. JURY DEMAND

49. Plaintiff demands a trial by jury on all issues in this case, save for attorney fees and costs, and hereby tenders the requisite jury fee.

## VIII. PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that this Court, after a hearing or trial, award a judgment to Plaintiff against Defendant for all reasonable damages;

lost earnings and employee benefits in the past; lost earnings and employee benefits that in reasonable probability will be lost in the future; all available compensatory damages, which include but are not limited to emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, loss of reputation and/or professional standing, & job search expenses; all-applicable injunctive relief described herein, such as reinstatement and mandatory ADA training; exemplary damages; applicable civil penalties; all applicable pre-judgment and post-judgment interest; costs incurred; attorneys' fees incurred; expert fees incurred; and an award of such other relief, both at law and in equity, to which Plaintiff may justly be entitled.

Respectfully submitted,

**WRIGHT & GREENHILL, P.C.**
4700 Mueller Blvd., Suite 200
Austin, Texas 78723
(512) 476-4600
(512) 476-5382 – Fax

By: /s/ Blair J. Leake
Blair J. Leake
State Bar No. 24081630
bleake@w-g.com
Elizabeth C. Haley
State Bar No. 24101852
chaley@w-g.com

**ATTORNEYS FOR PLAINTIFF**